### In the Interest of J.M., a minor.

Family No. 72-2596 JF. Case Nos.
73-1829 D, 2220 D, 2476 D, 2810 D.
Circuit Court, Dade County, Juvenile-Family Division.
January 22, 1974.

Michael P. Gale, Assistant State Attorney, for the state.

Melvin S. Black, Assistant Public Defender ,and Carl Masztel, intern in Public Defender's office, for the minor.

WILLIAM E. GLADSTONE, Circuit Judge.

These causes came on to be heard on January 14, 1974 for review, and present was Mr. Andrew Hurme of the State Division of Youth Services, who presented a report of the Florida School for Boys at Okeechobee dated January 9, 1974, to which were attached a program review summary dated January 9, 1974, and reports from Luis R. Fumero, M.D., consulting psychiatrist dated December 14, 1973 and January 5, 1974.

The court notes from the aforementioned reports that J. M., age 16, was in *mid December 1973* neither adjusting to the program at Okeechobee nor receiving the care suggested by the State Department of Health and Rehabilitative Services' Regional Inter-Agency Council and ordered by this court on October 15, 1973. By *early January 1974*, however, the reports indicate that he was then "making progress in our program", and the consulting psychiatrist recommended that he remain in the program. It is not indicated whether or not he has received the complete neurological evaluation and EEG recommended by the psychiatrist, nor whether or not he is receiving any medical, behavioral, educational, or

vocational care specifically designed for a delinquent child of borderline retarded intellectual capacity.

The court, at this late date in these proceedings, must conclude that there is no program in existence within the State Department of Health and Rehabilitative Services designed for the so-called "retarded delinquent", and the court must further conclude that the program presently being offered this child is an inadequate substitute for the care which he needs and to which he has a legal right.[1]

Whereas he may graduate from the state school program and be furloughed to the community, the court questions whether he will have then received sufficient vocational rehabilitation, treatment for his behavioral patterns, and remedial education so as to enable him to function successfully back in his community upon furlough — even with the additional care then to be provided by the State Division of Youth Services and other governmental agencies.

---

1. J. M.'s brother, another "retarded delinquent", was placed in the Sunland Training Center of the Division of Retardation by this court early last year at the suggestion of the Regional Inter-Agency Council of the State Department of Health and Rehabilitative Services (Case Number 72-2596 JF). Subsequent review hearings regarding that child have indicated, as might have been expected, that that borderline retarded child has also been placed in a facility inappropriate to his needs. He functions at an intellectual level considerably higher than his peers at Sunland; he is bored; he is not receiving treatment directed to his behavorial problems; and he is tremendously disruptive and continually delinquent within the program.

A significant percentage of commitments to the State Division of Youth Services (and some commitments to the Division of Retardation) by this court are of children of essentially the same condition as J. M. The court notes that a significant percentage of the inmates of adult "correctional" institutions also suffer from brain damage or intellectual deficits placing them in a level of intellectual functioning somewhat below normal. Unfortunately these people are not identified and appropriately treated at an early age. Such persons who appear before this court were typically born to inadequate or deprived parents who are either unaware of their childrens' conditions or unprepared to seek help. These children go into a school system which often either fails to identify the problem or deal with it effectively. The child fails the first grade and repeats. He then is administratively promoted to the second grade because of his physical size. His peers, and sometimes even his parents and teachers,

It is thereupon ordered and adjudged that this cause shall recur for further review hearing at least thirty days prior to the date of the anticipated furlough of this child (with written reports to be provided every two months in the interim) and that said reports shall reflect evaluation, care and treatment in keeping with this child's needs.

A copy of this order shall be forwarded by the Bureau of Field Services to the superintendent of the Florida School for Boys at Okeechobee, to the director of the State Division of Youth Services, the director of the Division of Retardation, the superintendent of Sunland Training Center at Opa Locka, and to the secretary of the Department of Health and Rehabilitatives Services of the state of Florida. Further, a copy of this order with the child's name deleted, shall be forwarded to the chairman of the school board of Dade County and the superintendent of schools, Dade County Public Schools.

It is further ordered that this court shall retain jurisdiction of this cause for the purpose of making such further or other orders herein for the welfare of any child named herein as may be from time to time found necessary.

---

call him "dumb", but the administrative promotions and reinforcements of his own feelings of failure continue until he is a teenager of high school age, still attending junior high, but performing at a primary grade level. He is embarrassed and frustrated in every activity and in every relationship. Although he is not identified by the community as retarded (he has an IQ ranging from the mid-fifties to the low eighties), he has some of the retardate's classical personality patterns — a low tolerance for frustration and a need for immediate gratification. At that point in the life of a J. M. or his brother, why should we not expect "acting out" in delinquent behavior?

Ironically, this court has been repeatedly advised, these children could, with relatively little effort, be brought to happy and productive adulthood. Were these children identified at an early age and their parents given training in their management, and were they educated and encouraged sensitively, they would be assets to their community instead of a large percentage of the perpetrators of crime and violence and the inmates of correctional institutions.

Somewhere within the spirit and framework of Florida's governmental reorganization the necessary interdisciplinary program for these special children can and must be devised and put into effect.